Terrett *v.* Crombie.

---

CHARLES W. TERRETT, Respondent, *v.* JAMES CROMBIE and MARY CROMBIE, Appellants.

(GENERAL TERM, SECOND DEPARTMENT, 1872.)

The defendant took a deed of building lots, which were under contract of sale, and agreed with his grantor to make advances for building purposes to the purchaser, and in due time convey to him and receive back mortgages, and, after deducting his advances and certain other sums and claims from the price under the contract, pay the surplus to the grantors by the second mortgages of the purchaser. *Held*, that he was a trustee *sub modo* for the grantor, and was bound to convey the subject of the trust to her on payment of the amount due him, with expenses of management and interest; and, until discharged from the trust, to hold, manage and preserve the property for the grantor.

*Held*, also, that he could not divest himself of the character of trustee by becoming the purchaser of the property upon foreclosure sales in actions brought by himself upon the second mortgages, no settlement having been made with the grantor, and she not having been party to the action. And that this was so, notwithstanding the legitimate claims of the defendant under the agreement exceeded the amount secured by the mortgages, and the remaining payments and securities had been exhausted by his payments in accordance with the agreement.

Terrett v. Crombie.

And *quere* whether the fact would have been otherwise if the grantor had been party to the foreclosure actions.

Nor was the defendant discharged from the trust by the grantor's refusal, upon request, to retake the property and pay him his advances and claims.

Nor by his paying to the grantor a greater amount than that of the mortgages.

*Held,* further, that the wife of the defendant had no claim to dower in the property, superior to the grantor's right to redeem, on payment of the advances, &c.

THIS was an appeal by the plaintiff from a judgment in the plaintiff's favor, entered on the report of a referee.

The action was brought to redeem certain property in Brooklyn, to which James Crombie, the defendant, claimed title as purchaser at foreclosure sales, in actions brought by him as the mortgagee in second mortgages thereon.

The facts as they appeared and were found by the referee were substantially these, viz.:

One Eleanor Terrett, the plaintiff's assignor, held the title to two tiers of five lots each, situate respectively on the north-easterly and north-westerly corners of Franklin and Madison streets, Brooklyn. These she had contracted to sell to one Jane Hudson at the price of $900 per lot, and at the same time had agreed to advance $6,600 to her for the erection of buildings upon the lots, and for conveyance upon completion of the buildings. Afterward, upon the failure of Jane Hudson to fulfill her part of the contract, the plaintiff conveyed the lots to the defendant, James Crombie, and assigned to him the contract of sale. Crombie executed back to the plaintiff an agreement in the nature of a defeasance, setting forth the object of the conveyances and the nature and extent of their respective interests in the property. The contracts with Jane Hudson were canceled, and new contracts, of like nature with the first contracts of sale, were given by Crombie to other parties, with the plaintiff's consent.

The ultimate agreement made between the plaintiff and Crombie contemplated that Crombie should make advances in aid of the erection and completion of houses on the lots

and in due time convey them and receive first and second mortgages thereon, which he should use as follows, viz. : The first mortgages in raising money to be applied toward the expenses of the improvements and toward reimbursing himself for advances. Upon satisfaction of his claims out of the proceeds of first mortgages, or of the sales of the houses and lots, and by retaining to himself second mortgages for the balance, Eleanor Terrett was to have all the residue of the second mortgages or moneys; but the second mortgages were not to be assigned until the houses should be completed. If there should be a failure of the party contracting to purchase and build upon the lots, and they should be sold to others, Crombie was to pay over to Eleanor Terrett all he should receive on sale of the houses and lots, after retaining to himself all sums and payments provided for in the contract.

In pursuance of the arrangement so made, Crombie conveyed the houses and lots to one Atkins, and received of him a first and second mortgage on each of the houses and lots . Of these first mortgages Crombie negotiated nine, retaining the other to himself, and he applied the moneys he received on the mortgages and used one of the second mortgages in procuring supplies for the buildings, and he ceased to have any interest in the house and lot covered by the last-mentioned second mortgage.

Before the completion of the houses, and on the failure of Atkins to pay the interest due on the nine second mortgages, Crombie obtained judgment of foreclosure upon the second mortgages, and for sale of the lots covered thereby, in an action in which he was plaintiff, as mortgagee. On the sale of the houses and lots in pursuance of the judgment, he, Crombie, became the purchaser, and took conveyances to himself. Eleanor Terrett was not party to the action.

After the foreclosure sale, Crombie sold and conveyed three of the houses, and held the remaining six at commencement of the action.

At the time of the conveyance to Atkins the houses were unfinished, he, Atkins, having failed to fullfil a contract made

Terrett v. Crombie.

with his assignee for the purchase of the property and comple
tion of the buildings, and the houses and lots were not then sale·
able for a sufficient amount to pay Crombie for his advances,
and the sums specified in his agreement with the plaintiff as
payable to him out of the proceeds of the sale and mortgages
of the property, which sums included advances for the build-
ing, for taxes, accounts due to him from the plaintiff, and for
services in care and attention and labor in respect to the pro-
perty, and also attorney's and counsel fees earned by him as
an attorney, etc., in respect to the same matters. At that
time Crombie requested the plaintiff's assignor, Eleanor Ter-
rett, to take the second mortgages, and pay him the amount
due under the agreement, but she declared her inability to
comply with this request.

At the foreclosure sale of the second mortgages, the agent
of Eleanor Terrett attended and bid upon the lots, but there
were no bids for a sufficient amount to cover Crombie's
claim under the contract upon the property, which in the
aggregate amounted to some $15,000.

Other facts are stated in the opinion of the court.

*James Crombie* and *Henry Woodruff*, for the appellants.

*J. M. Van Cott*, for the respondent.

Present—BARNARD, P. J., GILBERT and TAPPEN, JJ.

By the Court — GILBERT, J. The agreements between Mrs.
Terrett and Mr. Crombie are plain and unambiguous. They
show that all the transactions of Mr. Crombie in respect to
the real estate in controversy were entered into and conducted
by him for her benefit; that he held successively the title to
such real estate and the mortgage thereon as security merely
for her indebtedness to him, which each agreement specifies,
and that he was bound to transfer to her such real estate or
the proceeds thereof, upon being paid such indebtedness. He
was, therefore, as to the subjects of the agreement, a trustee

*sub modo* for Mrs. Terrett; that is to say, he was bound to convey the subject of the trust to her upon being paid the amount due him, with the expenses of management and interest, and in the meantime, or until duly discharged from the trust, to hold, manage and preserve the property for her.

When Crombie conveyed to Atkins and took back the mortgages, this character of a security was at once impressed on them, and he held them upon the same trust upon which he had before held the real estate. No rule in equity is better settled than that a person so situated is incapacitated from acquiring by purchase on his own account the property affected by the trust without the consent of the *cestui que trust*. The only effect of the foreclosure of the mortgages was to bar the equity of redemption of the mortgagor and those claiming under him in the land.

When Mr. Crombie as purchaser at the sale acquired the property, the same trust attached to it as had before attached to the mortgages. The decrees in the foreclosure suits did not affect Mrs. Terrett's equitable right to redeem the mortgages, for she was not a party to those suits; and it is at least doubtful whether it would have made any difference if she had been a party. Having a right to redeem the mortgages, she has, upon the principle before stated, the same right to redeem the land acquired by Mr. Crombie by the foreclosure thereof. The cases of *Hoyt* v. *Martinse* (16 N. Y., 231) and *Case* v. *Carroll* (35 id., 385) are decisive upon this point.

Has anything occurred to relieve or discharge Mr. Crombie from this trust? Nothing is shown except a request by Mr. Crombie, made to Mrs. Terrett in September, 1860, that she should take the property and pay him the amount due him, to which she replied that she was unable to do so. It is very clear that this transaction had no legal effect whatever upon the equitable rights of the parties. There was no relinquishment by Mr. Crombie of Mrs. Terrett's indebtedness to him, and, so long as this continued, her right to redeem and the trust to preserve that right continued also. A trustee cannot denude himself of the character of trustee by his own act, or by

abandoning or relinquishing the trust. He can be discharged only by a complete execution of the trust, by a decree of the court, by the agreement of the *cestui que trust*, or by virtue of a power in the instrument creating the trust. (Lewin on Trusts, 565.)

It appears that in July, 1860, Mr. Crombie advanced or paid to Mrs. Terrett a sum of $1,245, and another sum of forty-nine dollars, for which she gave written receipts, stating that they had been received on account of the last of the agreements aforesaid, dated February 25th, 1860, in lieu of mortgages. It is now claimed on behalf of Mr. Crombie that these sums, together with the sums previously advanced by him, and the indebtedness of Mrs. Terrett to him, mentioned in said agreement, exceeded the nominal amount of the mortgages in his hands, and that therefore the title to said mortgages became absolute in him, and the case of *Chalmer* v. *Bradley* (1 J. & W., 64) is cited as an authority for this position. But the *dictum* referred to merely shows that where a debtor places personal property in the hands of another for the purpose of raising a fund to pay the debts of the former, due to third persons, if the trustee advances to the creditors out of his own pocket more than the value of the property, he would acquire an absolute right to it by operation of law. No doubt there may be cases in which that principle would be correct. But it is never applicable where the trustee holds the property as security for his own debt. In such a case, the qualified title of the trustee cannot be converted into an absolute one, except by a sale authorized by law, or by consent of the *cestui que trust*. (Story Eq. Jur., § 1008.)

It is true, Mr. Crombie would have been bound to receive the amount of the mortgages in cash, if that amount had been tendered by the mortgagor or any one in privity with him, and in such case Mrs. Terrett would have been entitled to a credit only for the amount so received. But she is equally entitled to any incidental advantages arising from any other disposition of the mortgages, for the rule is

that a trustee shall not be permitted to speculate out of the subject of the trust. It is a salutary rule of public policy, and ought to be steadily upheld, in spite of the apparent hardship of particular cases.

It is also said that Mr. Crombie was entitled, by virtue of the agreement of July 25, 1860, to appropriate the mortgages in payment of the amount due him. We think that is not the fair import of the agreement; but, assuming that it is, he did not in fact so appropriate the mortgages. No accounting was had, the amount due from Mrs. Terrett was not ascertained, nor was she credited with any more on account of the mortgages. For aught that appears, Mr. Crombie retained the same hold upon Mrs. Terrett after the sales as before, and had done no act to bind him, in case the property depreciated, to apply any particular sum on account of her indebtedness. At all events, such indebtedness remained open and unliquidated, and therefore whatever he held as security, whether it was in the original or a substituted form, continued to be held merely as security, and he remained under all the obligations in respect to it which he originally assumed.

It is claimed on behalf of Mrs. Crombie that she has a right of dower in the premises sought to be redeemed. At common law the legal estate of a trustee was subject to dower; but, as a dowress takes by operation of law, if she should take dower in a trust estate she would only take it subject to the same equities as affected the trustee. Consequently it is now the rule that a widow has no dower in the lands held by her husband as trustee. If the trustee has a beneficial interest in the land, dower will attach to such interest; but not to the interest of a mortgagee, or to any interest which is subject to the right of redemption of the *cestui que trust.* Whatever right Mrs. Crombie has to the land in question is subject to the right of redemption of Mrs. Terrett, and will be effectually barred by a redemption by virtue of the decree in this case, or by a conveyance by her husband in execution of the trust thereby established. (Lewin on Trusts, 279; Kent Com., 43; *Cooper v. Whitney,* 3 Hill, 97; 1 R. S., 741, §§ 5, 6, 7.)

The conclusions of the referee appear to be in accordance with the principles expressed, and we have been unable to discover any errors in the account stated by him.

The decree, therefore, is affirmed without costs to the plaintiff; but a clause must be inserted in the judgment of affirmance, that if the plaintiff avails himself of the right to redeem, he must do it within thirty days after service of a copy of the judgment entered hereon upon his attorney, and that in default of such redemption he and all claiming under him be barred, &c., and that Mr. Crombie recover his costs upon this appeal.

The order upon the motion to send back the referee's report is affirmed, with ten dollars costs.