PETER W. ANDERSON

*v.*

SVEN O. OLIN *et al.*

*Filed at Ottawa, May 9, 1893.*

1. MORTGAGE—*foreclosure by pledgee—right of mortgagee to redeem from foreclosure sale.* The pledgee of notes secured by mortgage, foreclosed the same, making the mortgagor, the pledgor and others defendants. The bill prayed that the rights and equities of all the defendants be barred and foreclosed. The decree awarded a sale, and ordered that if the mortgaged premises should not be redeemed within fifteen months, the defendants, including the mortgagee, should be barred, and authorized any of the parties to bid at the sale. A sale was made to the pledgee for a less sum than was due him, and he obtained a deficiency decree against the pledgor for the balance due him. After deed was made to

the purchaser the pledgor filed his bill against the pledgee for leave to redeem the land from the sale, which was on the hearing dismissed. *Held*, that the bill was properly dismissed, as the pledgor's rights were barred by the decree, sale and lapse of fifteen months.

2. The decree of foreclosure by its terms having authorized any of the parties to become purchasers at the sale, the pledgee must be deemed to have purchased in his own right and in hostility to the pledgor, and can not be held to have purchased in trust for him.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook County; the Hon. H. M. SHEPARD, Judge, presiding.

FRANK F. REED, for the appellant:

1. It is the duty of a pledgee of commercial paper to take prompt steps and exercise reasonable diligence in the collection of the same, and a judgment entered thereon in a suit by such pledgee stands as collateral security. Commercial paper held as collateral security is not subject to sale, unless expressly so provided, or with the consent of the pledgor. Colbrooke on Collateral Securites, sections 182 and 183; *Union Trust Co.* v. *Rigdon*, 93 Ill. 458; *Zimpleman* v. *Veeder*, 98 Ill. 613; *Dalton* v. *Smith*, 86 N. Y. 176; *Joliet Iron Co.* v. *Scioto Fire Brick Co.*, 82.Ill. 548; *Cole* v. *Dalziel*, 13 Brad. 23.

2. The legal effect of the foreclosure proceedings was to leave the relations of pledgor and pledgee between appellant and Olin undisturbed. The legal title to the land was invested in Olin by his purchase, but only as trustee for Anderson. *Chicago Art. Well Co.* v. *Corey*, 60 Ill. 73; *Stokes* v. *Frazier*, 72 Ill. 428; *Killian* v. *Hoffman*, 6 Brad. 200; *Zimpleman* v. *Veeder*, 98 Ill. 613; *Jenkins* v. *International Bank*, 111 Ill. 462; *Stevens* v. *Dedham Savings Inst.*, 129 Mass. 547; *Brown* v. *Tyler*, 8 Gray, 135; *Montague* v. *B. & A. R. R. Co.*, 124 Mass. 242; *Rice* v. *Dillingham*, 73 Me. 59; *Hoyt* v. *Martense*, 16 N. Y. 231.

3. The fraudulent conduct of Olin, as set forth in the bill, will fasten upon him the condemnation of the court.

Having got the land for the fifth part of its value, and virtually converted the notes by failing to enter a deficiency decree against the maker, he should be held as a trustee *ex maleficio*. Pomeroy's Equity Jurisprudence, sec. 1051.

Messrs. BLANKE & CHYTRAUS, for the appellee, Olin.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court, affirming a decree of the Superior Court of Cook county, sustaining a demurrer to a bill in chancery, and dismissing the bill at the complainant's costs for want of equity. The facts disclosed by the bill are substantially these: On the 8th day of January, 1888, Franz Wallenstein, being indebted to Peter W. Anderson, the present complainant, in the sum of $1,245, executed to Anderson his four promissory notes, three for the sum of $366.66 each, and payable respectively in twelve months, eighteen months and two year after date, the fourth note being for $145, and payable on or before eighteen months after date, all bearing interest at the rate of eight per cent per annum, payable semi-annually. To secure the payment of these notes, Wallenstein and wife, on the same day, executed to Andrew O. Lindblad, as trustee, a trust deed conveying certain premises in Cook county. On the day on which these papers were executed Anderson borrowed of Sven O. Olin the sum of $366, promising to repay the same on demand, and as collateral security for such payment assigned and pledged to Olin the three notes for $366.66 and the deed of trust. On the 4th day of August, 1888, Anderson borrowed of Olin the further sum of $30, payable on demand, and agreed that Olin should hold the three notes and deed of trust as security for that loan also. It subsequently appeared that Samuel Chandler had become and was the owner and holder of the note for $145.

By the terms of the deed of trust, the party secured was at liberty to pay the taxes on the mortgaged premises, the same, when so paid, to become a charge upon the premises additional to the notes secured, and it was also provided that a solicitor's fee of $50 should be allowed the complainant's solicitor in case of foreclosure. Default having been made by Wallenstein in the payment of the note for $366.66 first falling due, and of the interest on all of the notes, Olin, acting under a provision in the deed of trust giving him power so to do, declared all of the notes due and payable, and afterward, on the 23rd day of March, 1889, he filed his bill in the Circuit Court of Cook county to foreclose the deed of trust. To that bill, Anderson, Wallenstein and wife, Lindblad, the trustee, Chandler, the holder of the note for $145, and others, were made parties defendant. The bill prayed for an accounting; for a decree requiring Wallenstein to pay into court for the use of Olin and such other parties as might appear to have an interest therein, whatever sum should be found due from him, including solicitor's fees and moneys advanced for the payment of taxes and costs, and that in default of such payment, the mortgaged premises be sold to satisfy the amount due on all the notes, and solicitor's fees and moneys advanced for taxes and costs, and that in case of sale and failure to redeem according to the statute, the defendants, and all persons claiming through or under them subsequent to the commencement of the suit, be barred and foreclosed of all right and equity of redemption in the premises, and that complainant have execution against defendants Anderson and Wallenstein for any balance that should remain due him, in case the sale of the mortgaged premises should fail to produce sufficient to pay the whole of the debt, solicitor's fees and costs of suit.

Anderson was duly served with process, but did not appear and made no defense, and a decree *pro confesso* was rendered against him by default. He alleges in his present

bill, that he was served with a summons in that suit, "but did not defend the same, through error and mistake on his part, believing and understanding that the litigation related to another piece of property in which he was slightly inter- ested, and with reference to which proceedings were begun about that time." Chandler and certain other defendants appeared and answered, and the cause was referred to a master, who reported that there was due from Wallenstein on the deed of trust, including the principal and interest of the four notes, the sum of $147 paid by Olin to redeem from tax sales, and the $50 solicitor's fee provided for in the deed, the sum of $1,411.64; that the money due to Olin, and for which he held the three notes and deed of trust as collateral, consisted of his two loans and interest, amounting to $440, the $147 paid by him to redeem from tax sales, and the $50 solicitor's fee, amounting in all to $637. Also that there was due to Chandler for principal and interest on his note the sum of $161.61, but that his lien was subsequent to that held by Olin; that there was another mortgage on the premises, junior to the deed of trust, held by Helen M. Chandler, another of the defend- ants to the bill, on which $347.88 was due and unpaid.

A decree was thereupon rendered confirming the mas- ter's report, and ordering that Wallenstein or some of the defendants, within five days, pay to the master the sum of $1,411.64, and pay to the officers of court the costs of suit; that in case such payment should be made, the mas- ter pay over to Olin the sum of $637, and bring the residue into court to await its further order; that unless such pay- ment should be made, the mortgaged premises be sold by the master in the mode in which sales of that character are required by law to be conducted; that Olin, or any of the parties to the suit, might become purchasers at such sale; that if the premises sold should not be redeemed accord- ing to law within fifteen months, the defendants, and all persons claiming under them or any of them since the com-

mencement of the suit, be forever barred and foreclosed of all right and equity of redemption or claim in and to the premises, or any part thereof, and the usual provision was made for the execution to the purchaser by the master of a deed, if the premises should not be redeemed according to law.

Payment not having been made as ordered by the decree, the mortgaged premises were advertised and sold by the master, and at such sale Olin bid therefor the sum of $500, and being the highest and best bidder, the premises were struck off and sold to him for that sum. Out of the money thus realized, the master paid the costs of suit and expenses of sale, and applied the residue, which was only $448.11, upon the principal sum found by the decree to be due to Olin. That left $188.89 still due, and for that sum Olin obtained a deficiency decree against Anderson, with an award of execution. No deficiency decree against Wallenstein seems to have been applied for, and none was entered. At the expiration of fifteen months from the day of sale, the mortgaged premises not having been redeemed, the master executed and delivered a deed conveying the same to Olin.

Anderson, by his present bill, is seeking to redeem from the foreclosure sale. His position is, that by the foreclosure proceedings the relation of pledgor and pledgee formerly existing between him and Olin was not changed, but that the effect was merely to vest the legal title to the mortgaged premises in the pledgor, freed from the equity of redemption of the grantors in the deed of trust, but subject to the pledgor's right of redemption, or, in other words, that it merely substituted the land as collateral security in place of the notes and deed of trust, leaving the equitable rights of the parties in all other respects the same as before. The theory seems to be, that the suit was not intended to and did not, in fact, operate as a foreclosure of the lien which Olin, as pledgee, held upon the notes and

deed of trust, but only of the mortgage lien, so as to cut off the equity of redemption of Wallenstein, and those claiming under him. This is clearly a misapprehension of the scope and effect of the proceeding.

It can not be doubted that the primary object of the foreclosure suit was to enforce the lien which Olin held upon the collaterals. It was brought to collect the money which he had loaned to Anderson, and that could be done only by converting the securities into cash by foreclosure and sale of the mortgaged premises. For that purpose a bill for foreclosure was filed, making Anderson, as well as all other parties in interest, defendants, the bill praying that the rights and equities of all the defendants, Anderson included, be barred and foreclosed. The decree awarded a sale, and ordered that, in case the mortgaged premises should not be redeemed within the period allowed by the statute, the defendants, of whom Anderson was one, should be barred and foreclosed of all right and equity of redemption therein.

The premises having been sold under the decree, and the statutory period having expired without redemption, there can be no doubt, we think, that, by the terms of the decree, Anderson's right of redemption is cut off. If a stranger had been the purchaser, no one would have doubted for a moment that such would have been its effect. But it is claimed that because Olin was the purchaser, a different rule should apply. The decree, by its terms, authorized any of the parties to become purchasers at the sale, and Olin having availed himself of that permission, he must be deemed to have purchased in his own right and in hostility to Anderson, and we see no tenable ground for holding that his purchase must be deemed to have been in trust for his pledgor.

Anderson's counsel has cited a number of authorities, from which he seeks to deduce the conclusion contended for, .viz., that the relation between Anderson and Olin, as

pledgor and pledgee, was not changed by the foreclosure and sale of the mortgaged premises. We have examined the cases cited with care, and find that they entirely fail to establish any such rule. Those upon which he mainly relies decide, that where a mortgage is assigned as collateral security for the debt of the mortgagee, and the assignee, when the mortgage debt falls due, forecloses the mortgage, without making the mortgagee a party to the foreclosure proceedings, and at the sale bids in the mortgaged premises, the title thus acquired by the assignee is held by him only as security for the debt to which the mortgage was assigned as collateral.

A review of the authorities cited is unnecessary. It is sufficient to say, that in none of them was the pledgor or assignor of the mortgage made a party defendant, nor did the decree in any of them assume to cut off or foreclose his rights. The only case to which we are referred by Anderson's counsel, where the pledgor seems to have been made a party in any form, is *Hoyt* v. *Martense,* 16 N. Y. 231. There the assignor and assignee of the mortgage joined as co-complainants in a suit to foreclose the equity of redemption of the mortgagor, but there was, so far as appears, no prayer that the assignor's equities should be barred or foreclosed, nor was there any provision to that effect in the decree. At the foreclosure sale the premises were bought in by the assignee of the mortgage, and it was held that the assignor's right to redeem from the sale was not barred. This conclusion seems to have been reached in reliance upon the authority of *Slee* v. *Manhattan Company,* 1 Paige, 48. In that case the mortgage held as collateral was foreclosed by advertisement and sale, as provided by a statute of New York, and not by judicial proceedings, and such foreclosure seems to have been treated as tantamount in its legal effect to a judicial foreclosure without making the assignor of the mortgage a party defendant.

But in the more recent case of *Bloomer* v. *Sturgis*, 58 N. Y. 168, the holder of the mortgage assigned as collateral brought suit to foreclose it, making the mortgagee a party defendant, and there, as in the case at bar, the relief prayed for was, among other things, that the defendants be barred and foreclosed of all right, claim and equity of redemption in the mortgaged premises, and there, as here, the decree ordered that the defendants be barred and foreclosed of all claim, interest and equity of redemption therein. At the sale, the mortgaged premises were purchased by the assignee of the mortgage, and the court, distinguishing the case from *Slee* v. *Manhattan Company,* and *Hoyt* v. *Martense, supra,* held that the assignor's equity of redemption in the premises was extinguished.

Some attempt is made by the bill to charge fraud upon Olin, but no facts are stated which can be held to amount to fraud, and we think the Superior Court very properly ignored them in sustaining the demurrer to the bill.

Nor does Anderson show himself entitled to any consideration in this case based upon the fact that he failed to appear in the Superior Court and make his defense. He was regularly served with process, and his only excuse for not appearing is, that he supposed that the bill related to another matter which he did not care to defend, and that he therefore allowed the decree to go against him by default. There is no pretense that he was misled in the matter by Olin, or that his failure to inform himself as to the scope of the bill was due to anything but his own negligence. Under these circumstances he is in no position to complain of the decree.

We find no error in the record, and the judgment of the Appellate Court affirming the decree must therefore be affirmed.

*Decree affirmed.*