[Sac. No. 693.   Department Two.—December 13, 1899.]

D. J. HOULT, Appellant, v. ROBERT RAMSBOTTOM et al., Respondents.

NOTE—MORTGAGE AS COLLATERAL SECURITY—FORECLOSURE—BID IN INTEREST OF PRINCIPAL DEBTOR—ACCOUNTING—TRUST.—Where a loan evidenced by a note given by direction of the lender to his agent was collaterally secured by a note and mortgage for a much larger sum assigned to the same agent, which was foreclosed by the agent under an agreement with the principal debtor that the bid should not be less than the amount thereof, for

his benefit, such debtor is not entitled to demand an accounting and payment of the surplus of the collateral note and mortgage above the original debt secured, and a decree declaring that the land purchased under the foreclosure, and the deficiency judgment therein, are held in trust by the agent as security for the principal debt, and refusing an accounting, will be affirmed upon appeal of the debtor therefrom.

ID.—COLLECTION OF COLLATERAL SECURITY—RIGHT OF DEBTOR TO ACCOUNTING.—The holder of a mortgage as collateral security may foreclose the lien, and, if he does so of his own motion, without fraud, he takes the absolute legal title to the property free from any trust therein, and must account to the debtor for the proceeds, if there is any surplus thereof. But where the bid is made larger than it otherwise would be at the request of the debtor, and for his benefit in respect of the amount of the excess, it would be inequitable to compel an accounting of the surplus, which existed only by reason of the act of the debtor; and he must be limited in such case to a right of redemption upon paying the principal debt, or to a right to have the trust property sold and the proceeds ratably apportioned.

ID.—HARMLESS REJECTION OF EVIDENCE.—The rejection of evidence as to the relations between the lender and his agent, which could not in anywise prejudice the rights of the appellant, under the findings and decree entered in his favor, or entitle him to any relief other or greater than that awarded, cannot be ground for reversal upon his appeal.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Edward I. Jones, Judge.

The facts are stated in the opinion.

Minor & Ashley, and A. H. Ashley, for Appellant.

Elliott & Elliott, for Respondents.

CHIPMAN, C.—Plaintiff brings this action for an accounting with defendant Ramsbottom; also for judgment against him for the surplus resulting from the proceeds coming into his hands upon the foreclosure of certain mortgages held by him as collateral security for plaintiff's debt; also for an assignment to plaintiff of a certain deficiency judgment arising out of said foreclosure proceedings, and for general relief. The court found as facts that Ramsbottom loaned plaintiff two thousand dollars and directed plaintiff to execute and deliver to defendant Sum-

merville his promissory note therefor, which was done; that as security for said note Ramsbottom directed plaintiff to assign to Summerville a certain note executed by W. J. and J. F. Hoult to plaintiff for five thousand five hundred dollars, together with a certain mortgage on real estate and a certain chattel mortgage, both given by said W. J. and J. F. to plaintiff to secure said last-mentioned note; that Summerville had no interest in the transaction and was acting merely as Ramsbottom's agent, except that subsequently in certain foreclosure proceedings he acted, through his attorney, defendant Webster, for the benefit of plaintiff. Summerville foreclosed the mortgage on the real estate, and the property was sold by a commissioner and was bid in by Summerville, the plaintiff in the action, for five thousand five hundred dollars; a certificate of purchase of the land was issued to him and for the deficiency Summerville had a judgment. As to this sale the court found that Summerville made the bid and purchase for said sum and took the certificate in his own name while acting, "as in the matter of said two thousand dollar note, for the benefit of Ramsbottom," and that he, Summerville, had no interest whatever in the purchase; that the foreclosure proceedings were conducted by Webster as Summerville's attorney of record, and said bid and purchase were made by Summerville through Webster, under an agreement with plaintiff "that said foreclosure proceedings should be conducted in Hoult's (plaintiff's) interest, and that five thousand five hundred dollars of the judgment in said proceedings in favor of D. J. Hoult (plaintiff) should be bid and used in the name of Summerville at the foreclosure sale"; that Webster was employed and paid cash in part by plaintiff to foreclose the mortgage, and was promised a further fee if it could be realized from the judgment; that the bid was made for the accommodation of Webster, Summerville, Ramsbottom, and plaintiff as above stated, and "in pursuance of the premises described in the undenied allegations of the complaint." What these "premises" or "undenied allegations" are the court does not point out. The admissions, so far as we discover, are that Summerville paid no money on account of the purchase; that the judgment in the foreclosure was for six thousand four hundred and seventeen dollars and fifteen cents and that he bid five

thousand five hundred dollars, and that Summerville was credited by the commissioner this amount, and that the certificate of purchase was issued to Summerville. It is further found that plaintiff joined in the receipt given the commissioner for the five thousand five hundred dollar bid under the agreements hereinbefore mentioned; that prior to the commencement of this action Summerville "orally offered to assign to plaintiff said certificate for less than the amount of said two thousand dollar note"; that Summerville has never assigned the certificate to Ramsbottom, but now holds it "precisely as between himself and Ramsbottom he held the two thousand dollar note— i. e., for the benefit of Ramsbottom—he, Summerville, having no beneficial interest therein." It appears that the personal property held in pledge was also sold to Summerville, upon proper proceedings had, as to which sale the court finds that he acted for Ramsbottom and had no beneficial interest himself therein; the court finds that prior to the commencement of this action the two thousand dollar note was not canceled or satisfied, nor was there deducted from the proceeds of the pledged property the amount due upon this note. There was a deficiency judgment docketed against the Hoults in the foreclosure proceeding, as to which the court finds that neither Summerville nor Ramsbottom has ever been ready or willing to assign the same, "save upon the condition that the plaintiff herein pay the full amount due and unpaid upon the two thousand dollar note," on which there appears to have been certain payments made amounting to six hundred and seventy-eight dollars, including, as we understand the evidence, the proceeds of the sale of the personal property sold under the chattel mortgage.

As conclusions of law, the court found that Summerville holds the title to the land purchased on foreclosure "in trust as security for, and for the purpose of securing the payment of," the two thousand dollar note in question; and also holds the deficiency judgment "in manner and for the purposes above stated," and that "plaintiff is entitled to a decree declarative that said Summerville has and holds the said land and said deficiency judgment in the manner and for the purpose above stated"; that plaintiff is entitled to his costs from Summerville and Ramsbottom, and is entitled to no further relief.

Judgment was accordingly entered, from which and from an order denying his motion for a new trial plaintiff appeals.

It was said in *Kelly v. Matlock*, 85 Cal. 122, that "the holder of a mortgage as collateral security, who causes the property to be sold on execution, and himself becomes the purchaser, does not hold the title as a trustee for his debtor, unless it is shown that he obtained the title by some fraudulent means. He cannot sell an evidence of debt of this kind, but may collect the same when due. (Civ. Code, sec. 3006.) And to that end he may foreclose the lien, and himself become the purchaser. (Civ. Code, sec. 3011.) If so, and no fraud is shown, he takes the absolute title to the property, and must account to the debtor for the proceeds." If Summerville in the present case had foreclosed his collateral mortgage on his own motion, as he had the right to do, and had bid in the property at five thousand five hundred dollars, no fraud appearing, he would have taken the absolute title to the property (subject, of course, to redemption of the mortgagors) and would have been compelled to account to plaintiff for the proceeds, i. e., the amount bid, which would, perhaps, have entitled plaintiff to what he now seeks. But the facts as found by the court, upon, as we think, sufficient evidence, show that Summerville bid five thousand five hundred dollars at the request of plaintiff, who himself with Summerville receipted to the commissioner for that amount, no money in fact passing, and the bid was thus made in excess of plaintiff's debt to Summerville for the benefit of plaintiff in the very amount of this excess now claimed by him. The evidence is that but for the agreement between plaintiff and Summerville, made with the attorney Webster, on plaintiff's behalf, the bid would have been only enough to cover the debt of plaintiff to Summerville. The trust found by the court does not arise by reason of the fraud of Summerville, for no fraud was alleged or proved, but it arises from the agreement by which Summerville took the title by purchase at foreclosure sale, and by which Summerville, as Ramsbottom's agent, had an interest in the property to the extent of the unpaid balance due on the two thousand dollar note to plaintiff, and plaintiff had an interest to the extent of the excess by reason of his being the owner of the five thousand five hundred dollar collateral mortgage note

and as mortgagee of its makers. We do not see how plaintiff can claim, on the facts found, that he should be paid in money the difference between the two above amounts; nor can we see any occasion for an accounting at this time. We think the decree accords to plaintiff his full rights. He may pay to Summerville the balance due the latter, and he would then be entitled to a conveyance of the land and an assignment of the deficiency judgment; or he may, by appropriate proceedings, have the trust property converted into money and the proceeds ratably apportioned. It would certainly be most inequitable to compel Summerville to account in money for a surplus which nominally exists by reason alone of plaintiff's acts, but which, by reason of depreciation in values since the purchase, may not now in fact exist at all. Many of the findings of fact are challenged as not justified by the evidence. Upon the principal question—whether Summerville bid five thousand five hundred dollars for the mortgaged property upon the agreement found—the evidence is conflicting. It was clearly testified to by Webster and was denied by plaintiff when on the witness stand. The receipt given the commissioner, as well as some other circumstances, tend to corroborate Webster's testimony. We are not at liberty to attempt a reconciliation of this conflict. Upon an examination of the record we cannot say there was not sufficient evidence to justify the findings.

At the trial plaintiff attempted in many ways to show the relation existing between Ramsbottom and Summerville in respect of the transactions, but the court refused the evidence, and the rulings are now claimed to be error. The fact alleged and sought to be proved by plaintiff came out, and the court found that Summerville was acting as the agent of Ramsbottom, and that Summerville had no beneficial interest in the loan or in the securities. As the case resulted and as the facts appeared, we cannot see that plaintiff was in any wise injured by the rulings of the court. There was no dispute that plaintiff got the money and that it was loaned to him by Ramsbottom; that he gave his note therefor to Summerville and assigned the collaterals to Summerville as security in the capacity of agent. Plaintiff's rights turned chiefly on the question whether the bid made at the foreclosure sale was for plaintiff's benefit and

by his direction and upon the agreements alleged by defendants. Upon this point plaintiff testified as to his conversation about the sale with Webster, who was managing the foreclosure, and he testified that he had no conversation with Ramsbottom or Summerville relative thereto. We have examined the assignments of error in excluding and admitting evidence, but cannot discover wherein plaintiff was injured by the rulings of the court, conceding that some of the rulings were error. We can discover no fact which plaintiff sought and was refused permission to prove that would have entitled him to greater relief than he finally was awarded.

Upon the whole case we are of opinion that the judgment and order should be affirmed, and so advise.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.